UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOSHUA AMIN, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 3:19-cv-02578-X |
| | § | |
| UNITED PARCEL SERVICE, INC. | § | |
| | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

This is a tort action to recover damages against UPS, alleging: (1) false imprisonment; (2) invasion of privacy; (3) intentional infliction of emotional distress; and (4) negligent supervision. Plaintiff Joshua Amin asserts these claims as a result of allegedly being denied his request to use the restroom by his UPS division manager, and then—under threat of termination—being required by the manager to continue working for 20 minutes after Amin had defecated himself. Amin alleges the division manager was aware that Amin had defecated himself and still required him to continue working. UPS filed a motion to dismiss on two independent grounds: (1) all of Amin's claims are preempted by Section 301 of the Labor Management Relations Act[1] because they require interpretation of a collective-bargaining agreement; and (2) the claims for false imprisonment, invasion of privacy, and

---

[1] 29 U.S.C. § 185.

1

negligent supervision each fail to state a claim. [Doc. No. 11]. After considering the motion, the responses, and all applicable law, the Court **GRANTS IN PART** and **DENIES IN PART** UPS's motion to dismiss.

## I.   Factual Background

Amin's complaint alleges the following facts: At the time of the incident, December 6, 2018, Amin was a member of the Local 767 division of the International Brotherhood of Teamsters ("the Union") and an employee of UPS. Amin worked as a package sorter for UPS. During his shift, Amin needed to use the restroom. Amin told his part-time supervisor, Brandon Humphrey, that he did not feel well and desperately needed to go to the restroom, which Humphrey permitted.

On his way to the restroom, Amin was stopped by division manager, Sergio Castro. Amin explained to Castro that he needed to use the restroom and that it could not wait. Castro told Amin that he could not use the restroom and directed him to return to his job and continue sorting. Amin responded that he was sick, was on antibiotics, and urgently needed to use the restroom. Castro allegedly continued to deny Amin's requests and threatened him with immediate termination if Amin attempted to use the restroom. The complaint claims that Castro stood "toe to toe" with Amin and threatened to "walk [Amin] out right now" if he attempted to use the restroom.[2] Amin complied and returned to sorting boxes.

Amin returned to work and Castro followed, allegedly standing directly behind Amin as he worked and telling him to move faster. Unable to use the restroom, Amin soon defecated in his pants. Castro, aware that Amin had defecated on himself,

---

[2] Amin's Complaint ¶18 [Doc. No. 1].

allegedly told him—on the threat of termination—to continue working for another twenty minutes until the task was complete. All of this occurred in the presence of Amin's co-workers. After Amin had completed the work, Castro told him, "now, you can go."[3] Amin later found Union shop steward Benny Brooks to report the incident. According to Brooks, Amin "was very distraught almost to tears and talking about the company and Sergio violating his rights as a human being."[4]

When Amin left work, he called the Occupational Safety and Health Administration to report what had happened. Amin also contacted UPS's Human Resources department and was told that UPS would open an investigation into the matter. The next day Amin was called into Castro's office where Amin was provided several notices and was informed of UPS's intent to discharge him for failure to follow management instructions. The same day Amin filed a grievance through Union shop steward Scott Killion. In his grievance, Amin asserted that UPS violated various provisions of the collective bargaining agreement when Castro threatened termination if Amin went to the restroom. Amin filed a separate grievance soon after regarding the notices Castro gave him. UPS later terminated Amin's employment due to a separate incident.[5] The Union and UPS later settled Amin's grievances in a way that did not compensate Amin.

---

[3] Amin's Complaint ¶22 [Doc. No. 1].

[4] Amin's Complaint ¶23 [Doc. No. 1].

[5] Amin was discharged on April 30, 2019, after a separate incident involving Amin and another employee pushing each other at work. Amin and the other worker were both discharged, but the other employee was later reinstated.

## II. Legal Standards

UPS has filed its motion to dismiss on two independent grounds: (1) that Section 301 of the Labor Management Relations Act preempts Amin's claims, as they require interpreting the Union's collective bargaining agreement with UPS; and (2) that Amin's claims for false imprisonment, invasion of privacy, and negligent supervision fail to state a claim for relief.

A party is entitled to dismissal under Federal Rule of Civil Procedure 12(b)(6) when the opposing party fails to state a claim upon which relief may be granted. When considering a motion to dismiss for failure to state a claim, the court must construe the complaint in favor of the plaintiff and accept all well-pleaded facts as true.[6] To survive a motion to dismiss, the plaintiff must allege enough facts "to state a claim to relief that is plausible on its face."[7] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[8] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[9] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[10] However, legal conclusions are not entitled to the same assumption of

---

[6] *Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

[7] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[9] *Id.*; *see Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").

[10] *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

truth.[11]

Regarding preemption, Section 301 of the Labor Management Relations Act provides jurisdiction and a cause of action for an employee to challenge violations of a labor contract between his employer and union.[12] Section 301(a) of the Labor Management Relations Act of 1947, provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.[13]

The Supreme Court has interpreted Section 301 as a congressional command to "fashion . . . a body of federal law for the enforcement of collective bargaining agreements."[14] Thus, state causes of action that allege collective bargaining agreement violations or require interpreting the collective bargaining agreement are preempted by the Labor Management Relations Act.[15] In assessing whether preemption applies, the Court must determine whether resolution of the state law claims will be "substantially dependent" on analysis of the collective bargaining agreement.[16]

There are limits to Section 301's preemptive reach. In *Allis-Chalmers Corp. v.*

---

[11] *Id.* at 678.

[12] *See Landry v. Cooper/T. Smith Stevedoring Co.*, 880 F.2d 846, 850 (5th Cir. 1989).

[13] 29 U.S.C. § 185(a).

[14] *Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103 (1962).

[15] *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 402–06 (1988); *Branson v. Greyhound Lines, Inc., Amalgamated Council Ret. & Disability Plan*, 126 F.3d 747, 753 (5th Cir. 1997).

[16] *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987).

5

*Lueck*, the Supreme Court observed that "it would be inconsistent with congressional intent under [Section 301] to preempt state rules that . . . establish rights and obligations, independent of a labor contract."[17] Additionally, merely consulting a collective bargaining agreement in the course of state-law litigation is not sufficient for Section 301 preemption of a state-law cause of action.[18] Even if a state law claim would require addressing the same facts that would be addressed in a dispute resolution under a collective bargaining agreement, the state claim will not be preempted if it can be resolved without interpreting the collective bargaining agreement.[19]

Moreover, the United States Supreme Court has refused to preempt state law actions that would normally fall under the scope of preemption if the activity "was a merely peripheral concern of the Labor Management Relations Act . . . (or) touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, [the Court] could not infer that Congress had deprived the States of the power to act."[20]

### III. Application

While preemption analysis goes claim by claim, Amin and UPS each make global arguments on preemption. The Court must address each global argument

---

[17] 471 U.S. 202, 212 (1985).

[18] *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994); *see also Lueck*, 471 U.S. at 211 (stating disputes tangentially involving a provision of the collective bargaining agreement are not preempted by Section 301).

[19] *Lingle*, 486 U.S. at 409–10.

[20] *Farmer v. United Broth. Of Carpenters and Joiners of America, Local 25*, 430 U.S. 290, 296–97 (1977) (quotation marks omitted).

*Lueck*, the Supreme Court observed that "it would be inconsistent with congressional intent under [Section 301] to preempt state rules that . . . establish rights and obligations, independent of a labor contract."[17] Additionally, merely consulting a collective bargaining agreement in the course of state-law litigation is not sufficient for Section 301 preemption of a state-law cause of action.[18] Even if a state law claim would require addressing the same facts that would be addressed in a dispute resolution under a collective bargaining agreement, the state claim will not be preempted if it can be resolved without interpreting the collective bargaining agreement.[19]

Moreover, the United States Supreme Court has refused to preempt state law actions that would normally fall under the scope of preemption if the activity "was a merely peripheral concern of the Labor Management Relations Act . . . (or) touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, [the Court] could not infer that Congress had deprived the States of the power to act."[20]

### III. Application

While preemption analysis goes claim by claim, Amin and UPS each make global arguments on preemption. The Court must address each global argument

---

[17] 471 U.S. 202, 212 (1985).

[18] *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994); *see also Lueck*, 471 U.S. at 211 (stating disputes tangentially involving a provision of the collective bargaining agreement are not preempted by Section 301).

[19] *Lingle*, 486 U.S. at 409–10.

[20] *Farmer v. United Broth. Of Carpenters and Joiners of America, Local 25*, 430 U.S. 290, 296–97 (1977) (quotation marks omitted).

before assessing each claim for preemption and failure to state a claim.

Amin asserts that his intentional tort claims cannot be preempted by Section 301 because, under Texas law, *Zachry Construction Corp. v. Port of Houston Authority of Harris County*, "[g]enerally, a contractual provision 'exempting a party from tort liability for harm caused intentionally or recklessly is unenforceable on grounds of public policy.'"[21]  However, UPS does not claim that the collective bargaining agreement exempts the party from liability.  Instead, UPS argues that the contract calls for an alternative forum for seeking remedial measures to the dispute at hand.  As the Supreme Court stated in *Livadas v. Bradshaw*, preemption under the Labor Management Relations Act is designed "in large part to assure that agreements to arbitrate grievances would be enforced."[22]  Thus, *Zachry* does not necessarily exclude these intentional tort claims from preemption under Section 301.  Holding otherwise would open the door to any and all Texas intentional tort claims and obstruct Congressional efforts to regulate collective bargaining agreements.  Thus, the Court rejects Amin's global argument on preemption.

UPS asserts that all of Amin's claims require interpreting the collective bargaining agreement to determine whether Castro was working within the scope of his employment—such that UPS could be liable for his actions.  However, Amin alleges, and UPS does not dispute, that Castro was not a Union member.  Thus, the question of whether Castro was working within the scope of employment is

---

[21] 449 S.W.3d 98, 116–18 (Tex. 2014) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 195(1) (1981)).

[22] 512 U.S. at 122.

7

determined by the contractual agreement between UPS and Castro (which is not in the record) and not by the collective bargaining agreement at issue here. Thus, the Court also rejects UPS's global argument on preemption.

### A. Intentional Infliction of Emotional Distress

Amin claims that UPS, acting through Castro, intentionally inflicted emotional distress by refusing Amin access to the restroom and then compelling him to work after he defecated himself. This is the only claim where UPS argues preemption and not also failure to state a claim.

To prove intentional infliction of emotional distress, Amin must demonstrate that "1) [UPS] acted intentionally or recklessly, 2) the conduct was extreme and outrageous, 3) the actions of [UPS] caused [Amin] emotional distress, and 4) the emotional distress suffered by [Amin] was severe."[23] UPS contends that determining whether management's decision reached outrageousness requires determining the employer relationship standards under the collective bargaining agreement. Thus, UPS argues, the claim is preempted by the Labor Management Relations Act. However, the Texas Supreme Court has defined extreme and outrageous conduct as being "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."[24]

UPS is correct in stating that the Fifth Circuit has, in several cases, concluded

---

[23] *Twyman v. Twyman*, 855 S.W.2d 619 (Tex. 1993) (citing RESTATEMENT (SECOND) OF TORTS § 46 (1965)).

[24] *Id.* at 621 (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965)); *see also Daniels v. Equitable Life Assurance Soc'y of United States*, 35 F.3d 210, 216 (5th Cir. 1994) (quoting RESTATEMENT (SECOND) OF TORTS § 46, cmt. d (1965)).

that claims for intentional infliction of emotional distress required an analysis of the employer's obligations under the collective bargaining agreement, and were therefore preempted by the Labor Management Relations Act.[25] However, Amin's claim for intentional infliction of emotional distress is different than those in cases cited by UPS. In *Baker v. Farmers Electric Cooperative, Inc.*, the Fifth Circuit held that the plaintiff did not allege any instances of harassment, discrimination, or physical abuse, but instead predicated his claim upon the fact that a reassignment of duties was causing him emotional distress.[26] In that case, the management rights construed in the collective bargaining agreement granted the defendant corporation the rights to direct, select, and determine the size of the workforce.[27] Thus, the agreement could have readily been interpreted to cover reassignment of duties. In *Burgos v. Southwest Bell Telephone Co.*, the plaintiff's claims were predicated on personnel decisions made by the defendant.[28] These personnel decisions were specifically covered in the collective bargaining agreement.[29] In *Brown v. Southwest Bell Telephone Co.*, the plaintiff argued that his absence from work did not constitute a just cause for discharge under the collective bargaining agreement and that his ERISA claim was wrongly denied.[30] The Supreme Court has specifically found such claims to be "necessarily federal in character by virtue of the clearly manifested intent of

---

[25] *See, e.g., Burgos v. Sw. Bell Tel. Co.*, 20 F.3d 633, 636 (5th Cir. 1994); *Baker v. Farmers Elec. Coop.*, 34 F.3d 274, 283–84 (5th Cir. 1994); *Brown v. Sw. Bell Tel. Co.*, 901 F.2d 1250, 1255–56 (5th Cir. 1990).

[26] 34 F.3d at 280.

[27] *Id.*

[28] 20 F.3d at 634.

[29] *Id.* at 634, 636.

[30] *Brown*, 901 F.2d at 1255–56.

Congress."³¹

In contrast, the terms of the collective bargaining agreement in this case do not cover the activity at issue here. Nor is the activity one courts have found to be necessarily federal in character.³² No provision of the collective bargaining agreement provided to this Court covers restroom access.³³

Thus, construing the complaint in Amin's favor and accepting all well-pleaded facts as true, the Court holds that Section 301 does not preempt Amin's claim for intentional infliction of emotional distress.

### B.   False Imprisonment

Amin alleges that UPS, acting through Castro, falsely imprisoned him when they prevented Amin (on threat of termination) from accessing the restroom or leaving his workstation. To prove false imprisonment under Texas law, a plaintiff must show "(1) willful detention; (2) without consent; and (3) without authority of law."³⁴ In its motion to dismiss, UPS contends that Amin's false imprisonment claim both fails to state a claim under Texas law and is preempted.

#### 1.   Failure to State a Claim

Amin specifically asserts three separate bases for his false imprisonment claim

---

[31] *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 67 (1987).

[32] There is no assertion, for example, that using the bathroom substantially affects interstate commerce. *But see Wickard v. Filburn*, 317 U.S. 111 (1942) (finding that growing wheat in your backyard for personal consumption substantially affects interstate commerce, thereby subjecting the activity to federal regulation). Perhaps restroom use qualifies as navigable waters. *See Rapanos v. United States*, 547 U.S. 715, 779 (2006) (Kennedy, J., concurring) (concluding that wetlands with a significant nexus to navigable waters could be subject to federal regulation).

[33] *See Smith v. Hous. Oilers, Inc.*, 87 F.3d 717 (5th Cir. 1996) ("If the agreement would not condone the activity, there is no preemption.").

[34] *Wal-Mart Stores v. Rodriguez*, 92 S.W.3d 502, 506–07 (Tex. 2002) (quotation marks omitted).

against UPS: (1) refusing to allow Amin access to the restroom; (2) confining Amin to his workstation before he defecated himself; and (3) requiring Amin to remain at his workstation while knowing he had defecated himself.

Under Texas law, a detention may be accomplished by "any . . . means that restrains a person from moving from one place to another."[35] Preventing someone from entering a particular place does not constitute false imprisonment under Texas law.[36] The Texas Supreme Court has held that, "when an employer supervises its employees, it necessarily temporarily restricts the employees' freedom to move from place to place or in the direction that they wish to go."[37] Moreover, "an employer has the right, subject to certain limited exceptions, to instruct its employees regarding the tasks they are to perform during work hours . . . an employer must be able to suggest, and even insist, that its employees perform certain tasks in certain locations at certain times."[38] Texas courts have expressed a strong resistance to adopting a rule "which would constantly place an employee in jeopardy of a charge of false imprisonment."[39]

Amin fails to state a claim under Texas law as to its three bases for false imprisonment because his arguments invert a false imprisonment claim. As noted

---

[35] *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644–45 (Tex. 1995).

[36] *Garcia v. Randolph-Brooks Fed. Credit Union*, 2020 WL 364133, at *9 (W.D. Tex. Jan. 22, 2020) (finding that preventing someone from entering their vehicle does not constitute false imprisonment).

[37] *Randall's Food Mkts., Inc.*, 891 S.W.2d at 645.

[38] *Id.*

[39] *Safeway Stores, Inc. v. Amburn*, 388 S.W.2d 443, 446 (Tex. Civ. App.—Fort Worth 1965, no writ); *see also Morales v. Lee*, 668 S.W.2d 867, 868–69 (Tex. App.—San Antonio 1984, no writ) (holding that there was no evidence of false imprisonment when a defendant screamed at his employee in the defendant's office and told the employee if she left the office, he would call the police).

above, preventing someone from entering a particular place does not constitute false imprisonment.[40] Here, Amin was told that he could not go to the restroom. Additionally, UPS—as Amin's employer—had the right to restrict Amin's freedom to move from place to place.[41] Indeed, concluding otherwise "would place an employee [like Castro] in jeopardy of a charge of false imprisonment" anytime a subordinate repeatedly requested to use the restroom or was seen as abusing their restroom privilege.[42] Thus, in the false imprisonment framework established by Texas courts, Amin's false imprisonment claim fails to state a claim upon which relief may be granted. As a result, the Court need not reach UPS's additional argument that the false imprisonment claim is preempted.

### C. Invasion of Privacy

#### 1. Failure to state a claim

Amin alleges that UPS, through Castro, intentionally intruded upon Amin's privacy by requiring Amin, on threat of termination, to work until he defecated himself, and by requiring Amin to continue working for twenty minutes thereafter. The Texas Supreme Court has expressly recognized two types of invasion of privacy: (1) unreasonable publicity given to private information about a person; and (2) unreasonable intrusion upon the seclusion or private affairs of another.[43] Amin asserts both of these theories here.

---

[40] *Garcia*, 2020 WL 364133, at *9 (finding that preventing someone from entering their vehicle does not constitute false imprisonment).

[41] *Randall's Food Mkts., Inc.*, 891 S.W.2d at 645.

[42] *Safeway Stores*, 388 S.W.2d at 446.

[43] *Cain v. Hearst Corp*, 878 S.W.2d 577, 578 (Tex. 1994).

For the claim of unreasonable publicity to be legally viable, the information must be "publicized."[44] The "publicity" requirement under intentional invasion of privacy differs from the "publication" element required for a claim of defamation in Texas.[45] In a privacy cause of action like Amin's, "'[p]ublicity' requires communication to more than a small group of persons; the matter must be communicated to the public at large, such that the matter becomes one of public knowledge."[46] Under the facts alleged, only a handful of people were present during this incident. Amin does not allege that the incident was communicated to the public at large, and therefore fails to meet the publicity requirement. Amin's invasion of privacy claim under the theory of unreasonable publicity fails to state a legally viable claim.

Amin also claims invasion of privacy under the theory of intentional intrusion upon seclusion. The Texas Supreme Court has adopted two elements to this cause of action: "(1) an intentional intrusion, physically or otherwise, upon another's solitude, seclusion, or private affairs or concerns, which (2) would be highly offensive to a reasonable person."[47] UPS contends that this theory does not cover the alleged conduct because the purpose of the tort is to protect acts committed in private, not private acts committed in public.

Assuming without deciding there was a privacy interest here, the Court must

---

[44] *Indus. Found. of the South v. Tex. Indus. Acc. Bd.*, 540 S.W.2d 668, 683 (Tex. 1976), *cert. denied*, 430 U.S. 931 (1977).

[45] *Id.*

[46] *Id.*

[47] *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993) (summarizing RESTATEMENT (SECOND) OF TORTS § 652B (1977)).

13

then determine whether a viable claim for intrusion on seclusion exists on these alleged facts. Specifically, the Court must determine whether, under Texas law, there is a viable intrusion upon seclusion claim when one party interferes with another's efforts to seek seclusion. Intrusion upon seclusion, at its core, is "the offense of prying into the private domain of another."[48] The cause of action is "typically associated with either a physical invasion of a person's property or eavesdropping on another's conversation with the aid of wiretaps, microphones, or spying."[49] It is thus "conceptually a quasi-trespass tort."[50]

Under Texas law, Amin's allegations do not support a cause of action for unreasonable intrusion upon a person's seclusion. Amin cites no authority where a Texas court concluded that a party suffered an intrusion upon seclusion after one party interfered with another's efforts to seek seclusion. Such an act does not involve a conceptual "quasi-trespass."[51] Instead, intrusion upon seclusion, under Texas law, is meant to protect individuals from being intruded upon once they are already secluded.[52]

For the reasons stated above, Amin has failed to sufficiently plead an invasion

---

[48] *Clayton v. Richards*, 47 S.W.3d 149, 153 (Tex. App.—Texarkana 2001, pet. denied).

[49] *Clayton v. Wisener*, 190 S.W.3d 685, 696 (Tex. App.—Tyler 2005, no pet.).

[50] *Doe v. United States*, 83 F. Supp. 2d 833, 840 (S.D. Tex. 2000).

[51] *Id.* at 840.

[52] *See Soda v. Caney*, 2012 WL 1996923, at *2–3 (Tex. App.—Dallas June 5, 2012, pet. filed) ("[Appellant] cites no authority, nor have we found any, where a Texas court concluded a party suffered an intrusion upon his seclusion absent evidence of a physical invasion or eavesdropping. On the contrary, other courts concluded evidence of a physical invasion or eavesdropping was necessary to sustain a claim for intrusion upon seclusion."); *Prince v. Nat'l Smart Healthcare Servs., Inc.*, 2011 WL 1632165, at *5 (Tex. App.— Houston [1st Dist.] Apr. 28, 2011, no pet.) ("Intrusion upon seclusion is 'typically associated with either a physical invasion of a person's property or eavesdropping on another's conversation with the aid of wiretaps, microphones, or spying.'") (quoting *GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet,* 61 S.W.3d 599, 618 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

of privacy claim. As a result, the Court need not reach UPS's additional argument that the invasion of privacy claim is preempted.

### D.   Negligent Supervision

Amin's fourth cause of action alleges that UPS negligently supervised Castro. Specifically, Amin alleges that UPS was aware that Castro routinely denied employees access to the restroom and failed to supervise Castro so as to ensure he did not abusively deny restroom access to employees. Amin contends this negligence led to Castro's unmonitored position where he could threaten Amin with termination if he attempted to use the restroom under the alleged circumstances.

#### 1.   Preemption

To prove negligent supervision, a plaintiff must prove: (1) a legal duty to supervise employees; (2) a breach of that duty; and (3) the breach proximately caused the plaintiff's injuries.[53] UPS argues that Amin must rely on the collective bargaining agreement to establish proximate cause and so his negligent supervision claim is preempted by the Labor Management Relations Act. Amin asserts that, because Castro was not a member of the Union, establishing proximate cause requires analysis of Castro's own employment agreement with UPS and not the collective bargaining agreement.

To establish that UPS's actions were the proximate cause of Amin's injuries, Amin must show that conduct by UPS was the proximate cause of his injuries and that his injuries were a foreseeable consequence of UPS's supervision over its

---

[53] *Knight v. City Streets, L.L.C.*, 167 S.W.3d 580, 584 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

management.[54] Thus, Amin must show that UPS "hired and retained these individuals who were incompetent or unfit for the job as a result of a failure to make a reasonable inquiry into the individual's competence and qualifications."[55] In *Alvarez v. United States Parcel Service Co.*, the district court held that "any duty to effectively supervise employees, or breach of such duty, is inextricably intertwined with the issue of discipline."[56]

Here, the collective bargaining agreement provides resolution procedures for grievances involving the relationships between managers and employees. Thus, resolution of Amin's claim for negligent supervision requires analysis of the collective bargaining agreement (specifically Article 51), regardless of whether or not Castro was a member of the Union.

Section 301 therefore preempts Amin's claim for negligent supervision and the Court need not reach UPS's arguments that the negligent supervision claim fails to state a claim.

### III. Conclusion

For the reasons set forth above, the Court **GRANTS** UPS's motion to dismiss with regards to Amin's (1) negligent supervision claim, (2) invasion of privacy claim, and (3) false imprisonment claim. The Court **DISMISSES** these claims **WITH PREJUDICE**.

---

[54] *Kastner v. Gutter Mgmt. Inc.*, 14-09-00055-CV, 2010 WL 4457461, at *5 (Tex. App.—Houston [14th Dist.] Nov. 4, 2010, pet. denied).

[55] *Alvarez v. United Parcel Serv. Co.,* 398 F. Supp. 2d 543, 553–54 (N.D. Tex. 2005) (quotation marks omitted).

[56] *Id.*

The Court **DENIES** UPS's motion to dismiss with regards to Amin's intentional infliction of emotional distress claim.

**IT IS SO ORDERED** this 18th day of June, 2020.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE