UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOSHUA AMIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:19-CV-02578-X |
| | § | |
| UNITED PARCEL SERVICE INC | § | |
| and UNITED PARCEL SERVICE OF | § | |
| AMERICA INC, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant United Parcel Service, Inc.'s (UPS) motion for summary judgment. [Doc. No. 56]. After a hearing on the matter and for the reasons stated below, the Court **GRANTS** UPS's motion for summary judgment and **DISMISSES** Amin's claim.

### I. Factual Background

UPS employed Plaintiff Joshua Amin as a package sorter in Dallas, Texas. On December 6, 2018, Amin went to use the restroom during his shift and walked past Division Manager Sergio Castro. Castro asked where Amin was going, and Amin explained that he was going to the restroom. Castro ordered Amin to return to his workstation. Amin responded that "it couldn't wait" and that he had to go right away. Castro allegedly forbid Amin from using the restroom and told him that he would "walk him out" if he refused to return to his workstation. Amin complied and returned to his station where Castro allegedly followed him and stood behind him,

1

"taunting" him.  Amin then defecated on himself at his workstation, and Castro yelled out to the rest of the employees that they could only use the restroom during their ten-minute break, and if they had to go outside of this time, they should relieve themselves at their workstation, "just like Josh."  Castro allegedly forced Amin to continue working until he had finished sorting boxes.  Amin sued UPS in this Court, bringing multiple causes of action that were dismissed in a previous order.[1]  UPS now moves for summary judgment on Amin's last remaining claim: intentional infliction of emotional distress.

## II. Legal Standards

Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the non-moving party,[2] "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3]  "A fact is material if it 'might affect the outcome of the suit,'" and a "factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[4]

## III. Analysis

### A.  Motion to Strike

The Court will first consider UPS's evidentiary objections to Amin's evidence. UPS objects to three categories of evidence: (1) Amin's friends' declarations;

---

[1] *Amin v. United Parcel Serv., Inc.*, 3:19-cv-02578-X, 2020 WL 3404119 (Starr, J.).

[2] *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016).

[3] FED. R. CIV. P. 56(a).

[4] *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

(2) Amin's declaration; and (3) Amin's failure to provide expert testimony related to his surgeries.  The Court construes the objections in UPS's reply brief as a motion to strike.  The Court will examine each objection in turn.

The first bucket of evidence UPS objects to is Amin's own declaration.  UPS specifically objects to paragraphs 23 and 24, which list Amin's symptoms, under the sham affidavit doctrine.  Under the sham affidavit rule, the Court "may refuse to consider statements made in an affidavit that are so markedly inconsistent with a prior statement as to constitute an obvious sham."[5]  If the plaintiff's deposition testimony and subsequent affidavit can be reconciled, the rule does not apply.

Here, UPS argues that Amin's declaration is a "sham" based on the following exchange at his deposition:

> Q. And what have you experienced as a result of the alleged incident on December 6th?
>
> A. Well, I can't – I really – This incident, thinking about this incident every single day of my life.  I do not know anyone who this has happened to them.  If, you know, if you ever have to go through something so humiliating, you know, this will – will affect your mind, your brain, your everyday life. To be humiliated front of all people, it is a personal debilitating.
>
> Q. How is it personally debilitating?
>
> A. It's just the weight on my mind. Every day I have to deal with – with the humil – humiliation and what I've gone through.
> . . .
>
> Q. Yes. Yes. I had previously asked you what you had experienced as a result of the incident on December 6th, and you shared some thing[s] with me.  Are

---

[5] *Winzer v. Haufman Cnty.*, 916 F.3d 464, 472 (5th Cir. 2019) (cleaned up).

there – Is there anything else that you have experienced as a result of the alleged incident on December 6th that you have not already mentioned?

A. Well, other than stress and physical, you know, in the last year, or 14 months, I've gone through three different surgeries.  And I was a person with no medical problems before that.
. . .

Q. Mr. Amin, my question was, and correct me if I'm wrong, but the things that you just mentioned about playing with your kid, playing soccer, and then your right knee issues, those were all caused by your spinal surgery?

A. That happened exactly on my surgery.  The doctor could not figure out – the doctor, I was keep saying, "Why my right knee, it's not – it's numb." And he – he believed that going through my rehab and all of that, that should go away, but still numb.

Q. Before your spinal surgery, were you still able to play with your kid, and play soccer, and things like that?

A. Yes, I was very active person.

Q. Did you remain an active person in 2019, before your surgery?

A. Yes, I did.  Yes, before my surgery.[6]

In contrast, his declaration claims he has lost interest in social interaction and no longer spends as much time with his son or friends following the alleged December 6 incident.

Amin argues that the affidavit is not inconsistent with his deposition testimony because UPS only asked about Amin's medical issues, not his social interactions or his familial connections, and therefore, the Court cannot disregard his declaration. The Court agrees.  Viewed in this light, the declaration can be reconciled with Amin's deposition testimony.   The declaration supplements rather than contradicts the

---

[6] Doc. No. 58 at 31–35.

4

deposition testimony and therefore cannot be disregarded as a sham.   Thus, this is a credibility issue for the jury, not the Court, to decide.   The motion to strike Amin's declaration as to paragraphs 23 and 24 is **DENIED**.

The second bucket of evidence that UPS objects to is Amin's claims in his declaration that he has "suffered health problems that derive in substantial part from the emotional distress he suffered as a consequence" of the incident.   Since the incident, Amin claims that he has had three surgeries: back surgery, gallstone removal, and gallbladder removal.   He also claims that he saw a doctor for stomach pains and chronic diarrhea.   He claims that all of these medical conditions can be linked to serious emotional stress.   UPS argues that there is no logical, traceable connection between the incident and Amin's surgeries such that expert testimony is not required, especially considering the time between the incident and the surgeries.

"[T]he general rule has long been that expert testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of jurors."[7]   Expert testimony is not required, however, when "general experience and common sense will enable a layman to determine, with reasonable probability, the causal relationship between the event and the condition."[8]   And "[g]enerally lay testimony establishing a sequence of events which provides a strong, logically traceable connection between the event and the condition is sufficient proof of causation."[9]   The Court agrees that there is not a logical, traceable connection

---

[7] *Guevara v. Ferrer*, 247 S.W.3d 662, 665 (Tex. 2007).

[8] *Id.* (cleaned up).

[9] *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 733 (Tex. 1984).

between Amin's alleged medical injuries and the incident. The causation of these medical conditions is not within the general experience and common sense of laymen. Therefore, the Court **GRANTS** the motion to strike this evidence.

Finally, UPS objects to both Chris Cataldi's and Lance Smith's declaration. For purposes of this summary judgment motion, the Court will consider the testimony from Smith and Cataldi because, as explained below, even without striking the evidence, Amin has failed to establish sufficient evidence of severe emotional distress.

### B. Motion for Summary Judgment

Under Texas law, to prove a claim for intentional infliction of emotional distress, a plaintiff must prove that "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe."[10] UPS contests Amin's version of events, but specifically challenges in its summary judgment motion Amin's ability to meet the fourth essential element of his claim—severe emotional distress.

"Whether severe emotional distress can be found is a question of law, but whether it existed in a particular case, is a question of fact."[11] "Emotional distress includes all highly unpleasant mental reactions such as embarrassment, fright, horror, grief, shame, humiliation, and worry."[12] But "[s]evere emotional distress is

---

[10] *Morgan v. Anthony*, 27 S.W.3d 928, 929 (Tex. 2000) (cleaned up).

[11] *Bevers v. Gaylord Broad. Co., L.P.*, No. 05-01-00895-CV, 2002 WL 1582286, at *7 (Tex. App.—Dallas July 18, 2002, pet. denied).

[12] *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 618 (Tex. 1999).

meant to be something more than just emotional distress."[13]   "Severe emotional distress is distress that is so severe that no reasonable person could be expected to endure it."[14]   Thus, a "plaintiff must prove more than mere worry, anxiety, vexation, embarrassment, or anger."[15]   "Feelings of anger, depression, and humiliation are insufficient evidence of severe distress."[16]   In determining severity, the Court considers factors such as "[t]he intensity and duration of the distress"[17] as well as whether or not the plaintiff sought treatment.[18]   "Severity of distress is an element of the cause of action, not simply a matter of damages."[19]  And a plaintiff must provide "sufficient proof of severe emotional distress, wholly apart from any outrageous conduct on the defendant's part."[20]

UPS contends that Amin has failed to prove as a matter of law that he suffered from severe emotional distress as contemplated under Texas law.  In response, Amin makes three arguments: (1) the shocking nature of the incident suggests that Amin suffered emotional distress; (2) the incident has caused a substantial disruption in his daily routine; and (3) he has undergone three surgeries as a result of the incident.

---

[13] *MVS Int'l Corp. v. Int'l Advert. Sols., LLC*, 545 S.W.3d 180, 205 (Tex. App.—El Paso 2017, no pet.).

[14] *GTE*, 998 S.W.2d at 618.

[15] *Bass v. Hendrix*, 931 F. Supp. 523, 531 (S.D. Tex. 1996).

[16] *Montemayor v. Ortiz*, 208 S.W.3d 627, 658 n.22 (Tex. App.—Corpus Christi 2006, pet. denied).

[17] *Toles v. Toles*, 45 S.W.3d 252, 263 (Tex. App.—Dallas 2001, pet. denied).

[18] *Higginbotham v. Allwaste, Inc.*, 889 S.W.2d 411, 417 (Tex. App.—Houston [14th Dist.] 1994, writ denied).

[19] *Benavides v. Moore*, 848 S.W.2d 190, 195 (Tex. App.—Corpus Christi 1992, writ denied).

[20] *Munoz v. H & M Wholesale, Inc.*, 926 F. Supp. 596, 612 (S.D. Tex. 1996) (quoting *Tidelands Auto. Club v. Walters*, 699 S.W.2d 939, 944 (Tex. App.—Beaumont 1985, writ ref'd n.r.e.)).

The Court has struck Amin's evidence purportedly supporting this third argument for failure to have any supporting expert testimony. After considering the rest of the evidence, the Court finds that Amin has failed to provide sufficient evidence of severe emotional distress under Texas law.

First, Amin contends that "the shocking nature of the incident itself suggests that Amin suffered emotional distress" and concludes that "anyone subjected to what Castro did to Amin would suffer significant emotional distress" and "a depth of shame, humiliation and a loss of personal dignity that is beyond the bounds of anything normal."[21] But these allegations do not prove that Amin himself suffered severe emotional distress.[22] Nor does his evidence of his reaction to the incident prove that he suffered severe emotional distress.[23]

Second, Amin claims that the incident has caused a substantial disruption in his daily routine.[24] As evidence, he points to declarations of friends who say that he

---

[21] Doc. No. 61 at 17, 19; *see also id.* at 20 ("[T]he record here is sufficiently shocking to demonstrate that he suffered emotional injury, and that the injury was severe.").

[22] The shocking nature of an incident may be a factor in proving emotional distress. *Am. Med. Int'l v. Giurintano,* 821 S.W.2d 331, 343 (Tex. App.—Houston [14th Dist.] 1991, no writ). However, Texas courts have found that plaintiffs must provide "sufficient proof of severe emotional distress, *wholly apart* from any outrageous conduct on the defendant's part." *Munoz,* 926 F. Supp. at 612 (emphasis added) (quoting *Tidelands Auto. Club,* 699 S.W.2d at 944).

[23] Amin points to testimony from an eyewitness who said that it was "obvious to everyone" that Amin appeared "extremely upset." Doc. No. 61 at 17. Another witness who saw Amin after the incident said that Amin was "very upset." *Id.* But the fact that Amin was very upset in reaction to the incident does not prove that he suffered severe emotional distress as a result of the incident. Moreover, his evidence that other employees knew about the incident is similarly insufficient to prove the severity of his distress. *Id.* at 17.

[24] Amin relies on the standard for mental anguish damages, which requires a plaintiff to show that "the nature, duration, and severity of mental anguish was sufficient to cause, and caused, either a substantial disruption in the plaintiff's daily routine or a high degree of mental pain and distress." *Serv. Corp Int'l v. Guerra,* 348 S.W.3d 221, 231 (Tex. 2011). But to prove severe emotional distress, the plaintiff must prove that the distress was so severe that no reasonable person could be expected to endure it. *GTE,* 998 S.W.2d at 618

is now almost hollow and overcome with sadness; socially isolated; abnormally depressed; and withdrawn.[25]  In his own declaration, Amin alleges that the incident is a constant source of stress.  His symptoms include worrying that his son will find out about what happened; worrying that his friends who know about it think less about him; and feeling humiliated, depressed, shame, resentment, bitterness, anger, and embarrassment.  He also claims that he has lost interest in a lot of the social interaction that he used to have, is tired and more isolated, and now avoids taking his son to places where there are likely to be crowds because he does not want to run into someone who will make a joke about the incident in front of his son.

These allegations are insufficient to prove severe emotional distress under Texas law.  Texas courts have found "general references to feeling nervous, stressed, withdrawn, and suffering a loss of happiness insufficient to meet the severe emotional stress threshold."[26]  All three declarations are replete with these types of allegations. Although they show that Amin may have suffered some emotional distress, they are inadequate to prove that he suffered *severe* emotional distress—especially

---

[25] Doc. No. 61 at 21.

[26] *MVS Int'l*, 545 S.W.3d at 205. *See Carroll v. Hoechst Celenese Corp.*, 204 F.3d 1118, 1999 WL 1330688, at *9 (5th Cir. 1999) (noting distinction between "emotional distress" and "severe emotional distress; *see also Brown v. Brosniak*, No. 3-02-CV-1421-BD(H), 2003 WL 21209460, at *2 (N.D. Tex. May 19, 2003) (Kaplan, J.) (collecting cases); *Carroll*, 204 F.3d 1118 ("[Plainitiff]'s fear, anxiety, fatigue, high blood pressure, and depression were not so severe that no reasonable person could be expected to endure such symptoms."); *Union Pac. R.R. Co. v. Loa*, 153 S.W.3d 162, 172 (Tex. App.—El Paso 2004, no pet.) ("[A]nger, feeling awful, feelings of unhappiness and embarrassment are exactly the kinds of relatively minor emotional distress that the term 'severe' is meant to filter out and render non-compensable under this tort."); *Blanche v. First Nationwide Mortg. Corp.*, 74 S.W.3d 444, 454 (Tex. App.—Dallas 2002, no pet.) (finding that the emotions of "intense embarrassment," humiliation, and frustration "do not rise, as a matter of law, to the level of being legally compensable injuries").

considering that he never sought professional help.[27]  Although it is not conclusive, Amin admitted he did not seek treatment for his emotional distress from the incident, and there is no evidence that he intends to do so, even though two of his close friends state that he seems depressed, and one friend has suggested he seek professional help on more than one occasion.[28]

Cases where courts have found sufficient evidence of severe emotional distress are instructive.  In *American Medical International v. Giurintano*, in addition to testimony that the plaintiff seemed dejected and depressed and was no longer the upbeat and enthusiastic person he once was, the plaintiff testified that he was so "depressed and frustrated and that he ask[ed] himself everyday if it is worth going on living."[29]  Others testified that he looked, older, grayer, and thinner than before.[30]  In *Haryanto v. Saeed*, a Texas court found a plaintiff suffered severe emotional distress where he was diagnosed with post-traumatic stress disorder, had difficulty sleeping, chest pains, and lived in fear of his life, among other symptoms.[31]

---

[27] *See id.*; *Regan v. Lee*, 879 S.W.2d 133, 136–37 (Tex. App.—Houston [14th Dist.] 1994, no writ) (plaintiff who "testified that she was '[v]ery angry,' humiliated, and suffered from depression as a result of the incident" but did not seek professional help did not establish severe emotional distress); *Loa*, 153 S.W. at 171–72 (plaintiff did not establish severe emotional distress where there was testimony that he "was withdrawn and no longer happy [but he] did not seek counseling or medical treatment").

[28] Doc. No. 58 at 36; Doc. No. 62 at 25.  *See Lewis v. Cont'l Airlines, Inc.*, 80 F. Supp. 2d 686, 704 (S.D. Tex. 1999) ("[I]n *Benavides,* the court found the plaintiff's admission that she had not consulted any mental health professionals and did not intend to do so to be indicative 'that whatever actual distress [she] suffered, it did not rise to the level that a reasonable person could not be expected to endure.'" (quoting *Benavides*, 848 S.W.2d at 196)).

[29] *Am. Med. Int'l*, 821 S.W.2d at 342–43.

[30] *Id.*

[31] *Haryanto v. Saeed*, 860 S.W.2d 913, 922–23 (Tex. App.—Houston [14th Dist.] 1993, writ denied).

In *Behringer v. Behringer*, the plaintiff suffered severe emotional distress where he feared for his life every day, slept with a pistol by his bed every night, and did not leave his house at night for nearly two years out of fear, and was much thinner than before.[32]  And in *Tidelands Automobile Club v. Walters*, the plaintiff could not talk to his children, became ill and disoriented, and experienced shock and anger.[33]  Amin's symptoms, while they may show circumstantial evidence of some emotional distress, do not rise to the level of severe distress as in these Texas cases.

Cataldi and Smith testify to Amin's change in demeanor and social withdrawal.  But in *Loa*, a wife's testimony that plaintiff was "withdrawn and no longer happy" was insufficient to establish severe emotional distress.[34]  Further, Amin claims that the incident has affected his daily routine, but he has failed to provide meaningful details as to how the relationship with his son fits into that daily routine.  He testifies to seeing his friends less, when he saw them only monthly before, but Amin does not provide enough details for the Court to say this was something no reasonable person should be expected to endure.[35]  There is no evidence of how often Amin would take his son places before and indeed, Amin testified that he was a very active person and played soccer and participated in activities with his son up until

---

[32] *Behringer v. Behringer,* 884 S.W.2d 839, 844–45 (Tex. App.—Fort Worth 1994, writ denied).

[33] *Tidelands*, 699 S.W.2d at 945.

[34] *Loa*, 153 S.W.3d at 171–72.

[35] Again, this might go to a disruption in daily routine.  But that is the standard for mental anguish damages, not the measure of severe emotional distress.

his surgery in 2019.[36]   Even so, feelings of humiliation, "even when embarrassed in front of children[] are insufficient evidence of severe distress"[37]

In sum, Amin has not "demonstrate[d] how the distress [is] unendurable."[38] Therefore, Amin's evidence fails to prove that his emotional distress was "so severe that no reasonable person could be expected to endure it," and it fails as a matter of law.[39]

## IV. Conclusion

The Court **GRANTS IN PART AND DENIES IN PART** UPS's motion to strike, **GRANTS** UPS's motion for summary judgment, and **DISMISSES** Amin's claim.  A separate final judgment will follow.

**IT IS SO ORDERED** this 1st day of March, 2022.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[36] Doc. No. 58 at 34–35.

[37] *Villasenor v. Villasenor*, 911 S.W.2d 411, 417 (Tex. App.—San Antonio 1995, no writ) (citing *Regan,* 879 S.W.2d at 136–37).  And again, without expert testimony, there is no logical, causal link between the incident and the 2019 surgery.

[38] *Regan*, 879 S.W.2 at 136.

[39] *Loa,* 153 S.W.3d at 171; *Benavides*, 848 S.W.2d at 195 ("The law intervenes only when the distress inflicted is so severe that no reasonable person could be expected to endure it.").